STATE of Missouri, Respondent,

v.

William TOMLIN, Appellant.

No. 61617.

Missouri Court of Appeals,
Eastern District.
Division Four.

Sept. 28, 1993.

John Klosterman, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

SMITH, Judge.

Defendant, William Tomlin, appeals his conviction of attempted sodomy, § 566.060 RSMo 1986, and kidnapping § 565.110 RSMo 1986. Defendant was sentenced to twenty-five years for attempted sodomy and ten years for kidnapping to be served consecutively. We affirm.

Defendant appeals his conviction claiming: 1) the evidence did not support the verdict; 2) the convictions violated his protection against double jeopardy; 3) the prosecutor peremptorily struck minority venirepersons for racial reasons; 4) the trial judge failed to instruct the jury on lesser included offenses; and 5) the instruction on reasonable doubt given to the jury was erroneous.

Defendant's first point challenges the sufficiency of the evidence to support the verdict. Specifically, defendant asserts the victim's testimony was so inherently incredible and self-destructive that it failed to provide substantial evidence for the jury to con-

sider. In addition, defendant argues that since a charge against him involved a sex offense, inconsistencies in the State's evidence required corroboration of the victim's testimony.

In reviewing a conviction based on a challenge to the sufficiency of the State's evidence our inquiry is limited to whether the evidence, viewed in the light most favorable to the State, is sufficient to support the verdict. *State v. Hudson,* 793 S.W.2d 872 (Mo.App.1990) [1]. In determining the sufficiency of the evidence, all evidence supporting the verdict is regarded as true with contrary evidence discarded. *State v. Adkins,* 800 S.W.2d 28 (Mo.App.1990) [1, 2].

Viewed in this light, the jury could find that on August 13, 1993, the victim was walking down a residential street in North St. Louis around 8:00 a.m. when defendant and Alvin Poole (codefendant) accosted her. Defendant and codefendant forced the victim into a nearby house where they forcibly disrobed her. Defendant then repeatedly slapped the victim on her rear and both defendant and codefendant demanded the victim fellate them. Seizing an opportunity, the victim was able to escape the building by quickly gathering her clothes and running out an unlocked door. She fled across the street where she was able to clothe herself and enlist the assistance of a local merchant in contacting the police.

In challenging the substantiality of the evidence, defendant points to a number of factual discrepancies within the evidence produced by the State at trial. Specifically, the defendant notes: 1) the victim testified she called for help inside the local store, while the merchant testified she phoned the police from a pay phone outside; 2) the victim testified she told the 911 operator that two men tried to rape her, while the recording of the call to the 911 operator indicated she said, "someone is harassing me"; 3) at trial the victim stated defendant removed all of his clothes and codefendant had only lowered his pants, while she had told the police both men were completely naked; and 4) the victim testified that when defendant and codefendant attacked her around 8:30 a.m. the business across the street was not open, but

the owner testified he had opened the store at 7:00 a.m.

Defendant attempts to invoke the doctrine of destructive contradiction whereby an appellate court may decide as a matter of law whether the evidence produced at trial was sufficient to induce a belief of the defendant's guilt beyond a reasonable doubt in the minds of jurors of average reason and intelligence. *State v. Gregory*, 96 S.W.2d 47 (Mo.1936) [5, 6]. Defendant's challenge to the substantiality of the State's evidence under this doctrine is of no avail. As noted by the *Gregory* court itself, "the cases in which [a] court will set aside a conviction supported by evidence are rare." *Id.* at 53 [5, 6].

■■■ The testimony of a single witness is sufficient to support a conviction even if the testimony of the witness is inconsistent, as such inconsistencies are for the jury to resolve. *State v. Cody*, 800 S.W.2d 750 (Mo. App.1990) [1, 2]. Contradictions within a witness' testimony do not inherently make the evidence insubstantial. *State v. Loazia*, 829 S.W.2d 558 (Mo.App.1992) [1]. Additionally, "inconsistencies in a victim's story related to non-essential details do not destroy the submissibility of the case." *State v. Pelz*, 845 S.W.2d 561 (Mo.App.1992) [3–5]. For evidence to be disregarded under the destructive contradictions rule the inconsistencies and contradictions must be "so diametrically opposed to one another as to preclude reliance thereon and rob the testimony of *all* probative force." *State v. Ash*, 840 S.W.2d 304 (Mo.App.1992) *quoting State v. Kuzma*, 745 S.W.2d 700 (Mo.App.1987) [2].

The inconsistencies in the victim's testimony relied on by defendant are of little import. The manner in which the victim notified the police, how the attack was characterized, the various states of undress of her assailants, and whether a local business was open at the time of the assault, do not go to any material element of the State's case. The discrepancies in the testimony are not so incongruous as to make the testimony inherently incredible, self-destructive, or opposed to known physical facts.

■■■ Defendant next contends that the victim's testimony must be corroborated. As previously noted, the general rule is the testimony of a single witness is sufficient to sustain a conviction. *State v. Cody*, 800 S.W.2d 750 (Mo.App.1990) [1, 2]. In cases involving sexual offenses, the victim's testimony will ordinarily sustain a conviction, even if uncorroborated. *State v. Hill*, 808 S.W.2d 882 (Mo.App.1991) [19, 20]. Some cases have recognized a narrow exception to the general rule requiring corroboration of the victim's testimony when: 1) the defendant is charged with a sexual offense; 2) the inconsistencies or contradictions bear on an issue essential to the case; 3) the inconsistencies exist within the victim's own statements; and 4) the victim's testimony is rendered doubtful by gross inconsistencies and contradictions. *State v. Koonce*, 731 S.W.2d 431 (Mo.App.1987) [8]; *State v. Daniel*, 767 S.W.2d 592 (Mo.App.1989) [1, 2]. The attorney general urges the abolition of the corroboration rule. The facts of the present case do not require that step.

The inconsistencies raised by defendant do not fall within the corroboration exception. None of the statements relied upon by defendant goes to an element of the State's case. Only one of the discrepancies involved statements by the witness herself and it related to a non-essential aspect of the case. Further, taken as a whole, the inconsistencies do not create gross contradictions that make the victim's testimony inherently unbelievable or shrouded in doubt. At best, the variances in the State's evidence would relate to the credibility of the witnesses, not the submissibility of the evidence. Credibility is for the jury. The trial court did not err in submitting the case to the jury.

■■■ Defendant's second point is that the conviction on both the charges of attempted sodomy and kidnapping violate his protection against double jeopardy. Defendant asserts that the trial court erred in denying his motion for judgment of acquittal at the close of evidence because the kidnapping was incidental to, and not a separate offense, from the attempted sodomy.

■■■ Defendant correctly notes that the crime of kidnapping was intended to cover those situations were the asportation or con-

finement of the victim was not merely incidental to the other charged crime, but creates a harm that is not adequately covered by another offense. In determining whether the movement or confinement of a victim are mere incidents to one offense or constitute a separate kidnapping offense a court must examine the risk of additional harm or danger created by the movement or confinement that is not present in the initial offense. *State v. Williams,* 860 S.W.2d 364, 366 (Mo. App.E.D.1993). Kidnapping also occurs where the movement or confinement is for the purpose of facilitating the commission of a felony. Section 565.110.1(4).

■ Although the State must prove an increased risk to the victim from the movement or confinement, the increase in risk need not be inherent in the movement or confinement itself. *State v. Olds,* 831 S.W.2d 713 (Mo.App.1992) [12–14]. The additional risk necessary to sustain a conviction of kidnapping may be established by the State "from the potential of more serious criminal activity because of the remoteness or privacy of the area to which the victim was removed." *Id.*

Defendant attempts to down-play the impact of removing the victim to a building, contending that the victim "suffered no more harm than if the alleged attempted sodomy occurred on the sidewalk itself." Initially, such an argument ignores the obvious fact that a sodomy is "facilitated" by occurring in an empty building rather than on a public street in broad daylight. Defendant's argument also fails to recognize that the focus of the analysis is not on actual injury, but rather, the increased risk to the victim. The case cited by the defendant, which presents facts strikingly similar to those in this appeal, concluded that "[b]y moving the victim to an abandoned building, defendant increased his ability to prolong his sexual assault and make it more violent. He also decreased the chance that there would be any witnesses to the attack." *State v. Jackson,* 703 S.W.2d 30 (Mo.App.1985) [3]. The facts of the present case demonstrate that movement and confinement of the victim were more than incidental to the attempted sodomy.

■ Defendant's third point on appeal contends the trial court erred in overruling his *Batson* challenge. In *State v. Parker,* 836 S.W.2d 930 (Mo. banc 1992), the Missouri Supreme Court specifically outlined the procedure for handling a *Batson* challenge.

Defendant made a timely *Batson* motion during *voir dire.* Defendant identified venirepersons Nance, Reese, Lipsey, and McDonald as African–Americans that the prosecutor had peremptorily struck. The prosecutor explained he struck all four because each had relatives who had been convicted and served prison terms. Further, venireperson Lipsey stated she would have difficulty imposing a life sentence for attempted sodomy, and venireperson McDonald was dissatisfied with police participation in past cases in which she was involved. Defendant argued that the State's explanations were pretextual because similarly situated white venirepersons had not been struck.

The trial court's determination regarding purposeful discrimination remains a finding of fact and will not be overruled unless it is clearly erroneous. *State v. Robinson,* 844 S.W.2d 85 (Mo.App.1992) [2]. Clear error is only established when the reviewing court is left with a definite and firm conviction a mistake has been made. *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987) [17].

In the present case, venirepersons Lipsey and McDonald possessed additional characteristics upon which the prosecutor could base valid peremptory strikes. Defendant is left to compare venireperson Nance, who had a cousin convicted of armed robbery, and venireperson Reese, who had a son convicted of larceny, with venirepersons Kleen, who had been convicted of second degree trespass, and Bonnot, who had a brother in law convicted of driving while intoxicated. The State explained that the crimes committed by the relatives of the stricken venirepersons were more severe than those committed by the venirepersons that were not. Given the differing nature of these crimes, the subjective factors that the trial judge may consider when determining the plausibility of the State's explanation, and the deferential standard of review, defendant has failed to establish a clear error in the trial court's ruling.

**368**

Defendant's fourth point on appeal is the trial court erred by failing to give the jury instructions on first and third degree sexual assault, §§ 566.100, 566.120 RSMo 1986, as lesser included offenses to the attempted sodomy count. Defendant reasons since slapping the victim on the rear does not involve the genitals of either victim or defendant there is a factual distinction going toward an element of the charge that would warrant an instruction for lesser included offenses. *See, State v. Keil,* 794 S.W.2d 289, 291 (Mo.App.1990) [1, 2].

Defendant's argument must fail for both factual and legal reasons. First, there is nothing in the trial transcript to indicate defendant touched the victim's anus. *Stedman's Medical Dictionary 94* (24th ed. 1982) (defining anus as "[a]nal orifice, the lower opening of the digestive tract ...").

Second, even if the slaps to the rear were to be considered the kind of contact proscribed these actions would constitute a separate offense from the conduct sustaining defendant's sodomy conviction. The two sets of actions described involve separate and distinct parts of the anatomy, were for different purposes, and have sufficient individual identity to constitute two separate offenses. *State v. Mudd,* 703 S.W.2d 63, 66 (Mo.App. 1985) [6]. The trial court did not err by refusing to instruct the jury on lesser included offenses.

Defendant's final point on appeal contends the trial court erred by submitting Instruction No. 4, patterned after MAI–CR3d 302.-04, defining "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." This argument has been made before the appellate courts numerous times and has been rejected without exception. *State v. Griffin,* 848 S.W.2d 464 (Mo. banc 1993) [8].

Judgment affirmed.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.